to certify their inability if they cannot. The argument of the eminent counsel for the appellant, with characteristic cogency and ability, after all but points out a difficulty of performance which, even if it reaches improbability, does not demonstrate impossibility. And, so long as the act may be possible, the consideration of difficulty, however grave, should not stay the court from the command.

[3-5] I do not understand that perforce of this writ these inspectors can recount or indirectly work a recount of the ballots already counted and returned by them. This would be contrary to law. People ex rel. McLaughlin v. Ammenwerth, supra; Matter of Hearst v. Woelper, supra. The canvass of the inspectors is not conclusive in any direct proceedings of the kind heretofore indicated. I think that the inspectors are not functi officio so far as the requirements of this order are concerned. Baird v. Supervisors, supra; People ex rel. McLaughlin v. Ammenwerth, supra; Merrill on Mandamus, § 185; People ex rel. Smith v. Schiellein, 95 N. Y. 132.

[6] It is not a matter of objection that this proceeding, although it relates to the office of a Representative in the Congress, is instituted in a state court. McCrary on Elections, p. 292; Merrill on Mandamus, § 183.

The order should not, however, authorize the officials to change or to erase or to strike out any writing which they have made heretofore, whereby they sought to comply with the requirements of the Election Law.

The order is modified as indicated, and as modified is affirmed, without costs.

The parties hereto having stipulated in open court that this case may be disposed of by a court of four, the decision is as follows: Order modified in accordance with opinion by JENKS, P. J., and as so modified unanimously affirmed, without costs.

CARR, RICH, and PUTNAM, JJ., concur. Settle order before the Presiding Justice.

---

TURNER v. NEW YORK CENT. & H. R. R. CO. (No. 94-4.)

(Supreme Court, Appellate Division, Third Department. May 7, 1915.)

1. ARBITRATION AND AWARD ⚷64—SETTING ASIDE—PURPOSE OF SUBMISSION.

Where plaintiff, owner of timberland, and defendant railroad, stipulated that five appraisers should determine the damage to such timberland by fires set by defendant road, and where such defendant's appraisers prevented the board as a board from making the contemplated appraisal so that the plaintiff's appraisers withdrew, the award of the majority and the stipulation for appraisal itself were properly set aside, since the agreement that the five appraisers were to act as a board implied that the full board should act, although a majority was to govern, receiving the benefit of the knowledge and suggestions of each member.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 321-327; Dec. Dig. ⚷64.]

2. ARBITRATION AND AWARD ⚷20—PURPOSE OF SUBMISSION.

In an action against defendant railroad for causing fires in timberlands, where the stipulation submitting the amount of damage to a

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

board of appraisers provided that they might call upon either party for any data, copies of contracts, or documents, such board's function was not simply to determine the amount of physical damage to the lands, but it was their right and duty to consider in reduction of plaintiff's loss a contract, which he had made subsequent to the fires, selling timber on the burned area to a third party.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 87-96; Dec. Dig. ⚷20.]

Appeal from Special Term, Franklin County.

Action by Charles H. Turner against the New York Central & Hudson River Railroad Company. From an order setting aside a report of appraisal and a stipulation for appraisal, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

McClary & Allen, of Malone (William L. Allen, of Malone, of counsel), for appellant.

Jones, Townsend & Casey, of Utica (A. M. Mills, of Little Falls, of counsel), for respondent.

WOODWARD, J. This action was brought to recover damages alleged to have been sustained by the plaintiff through the negligence of the defendant in setting forest fires in the town of Altamont, Franklin county. The complaint alleges damages to the amount of $420,000. On the 10th day of August, 1911, the parties to the action, for the avowed purpose of saving time in presenting the evidence in respect to damages, entered into a stipulation, through their respective attorneys, by which it was provided that:

"Each party hereto shall select two appraisers, who, together with Mr. William W. Wheeler, shall constitute a board of appraisers, who shall, upon a personal examination of each of the lots upon which damages are claimed as set forth in the complaint herein, make an appraisal of such damage, and fix upon the amount of damage upon each separate lot, by a majority vote of said appraisers."

It was further provided that the appraisal should be made as soon as practicable, the parties using whatever time was necessary in their judgment for the work; "that they may consider such information as they may be able to obtain and deem reliable upon the question of the exact extent of said fires of 1908; the damage done by any other fires not to be considered"; that the appraisers might call upon the parties for data, copies of contracts or other documents which they may require in making their appraisal; and that "either party to this action may furnish to said board of appraisers for their consideration copies of any documents bearing upon the question of such damages, each party to furnish to the other copies thereof." It was further stipulated:

"That such appraisers shall fix the amount of damages upon said township 19 by fires during said months of September, October and November, 1908, by lots, giving the number of the lot and the amount of the damage which the board or a majority of them shall find was done upon such lot by the fires during such period."

After providing for the payment of the expenses of this board, it was finally stipulated that the original findings should be filed in the office of the clerk of Franklin county, "and such findings shall be accepted by the parties hereto as fixing the amount of the damages as therein stated in accordance with the terms of this stipulation, and either party shall have the right to introduce such findings upon the trial of this action, and no other evidence of the amount of damages shall be introduced by either party."

The plaintiff selected as such appraisers Charles L. Whitney and Horace W. Downey. The latter refused to serve, and his place was filled by the selection of Daniel B. Barnett. The defendant selected John H. Amlott and William E. Le Fountain. These appraisers, with the umpire who had been selected by common consent, entered upon the discharge of their duties, and on or about the 16th day of October, 1911, an award, signed by W. W. Wheeler, John H. Amlott, and W. E. Le Fountain, was duly filed, in which the damages were fixed by lots, aggregating $6,145. Whitney and Barnett, while participating in all of the field work and in the final conference to near the end, finally withdrew from the appraisement, submitting separate reports, in which Whitney fixed the damages at $119,450.64, and Barnett at $96,133.44.

Subsequently, and on the 2d day of December, 1911, the plaintiff moved at the Schenectady Special Term to vacate and set aside the award upon various grounds, among them that the appraisal was a common-law arbitration, and that it was void because of the fact that the appraisers had failed to file the oath required by section 2369 of the Code of Civil Procedure. The motion upon this ground was denied; but, there being a conflict in the affidavits in respect to the other matters urged, the court made an order sending the matter to a referee to ascertain the facts. The referee who heard the testimony of the parties was in the meantime chosen to the Supreme Court, and by stipulation the questions involved were determined at Special Term, the same as though the same had been brought on by motion to confirm the report of the referee. This proceeding resulted in the order appealed from, which sets aside, vacates, and declares of no force or effect the award, as well as the stipulation underlying such award. The defendant appeals from the order, and the plaintiff appeals from so much of the original order as denies the motion to dismiss the award as a common-law arbitration, and from so much of the second order as imposes the expense of the reference upon the plaintiff, although this does not seem to be seriously urged upon the brief, and probably could have little force, so long as the plaintiff is permitted to enjoy the benefits of the order.

We are persuaded there is no force in the contention that this was a common-law arbitration. It was, by the terms of the stipulation, confined to the question of damages sustained upon each one of many lots of land, some of which, it appears, might fairly be held to be without the scope of liability on the part of the defendant in any event. There was no concession on the part of the defendant that it was liable for any part of the damages; certainly not that it was liable for all of them. The stipulation went no farther than to provide that the appraisers should determine, lot by lot, the amount of damage sustained

by certain fires occurring in the fall of 1908, leaving the question of liability for such damages to be determined by the court, and such an appraisal is not an arbitration, for that contemplates the submission of the entire controversy.

We think the order appealed from should be affirmed, not, however, upon the ground that there was fraud or unfairness on the part of the majority of the board of appraisers, but because of an obvious failure to perform the duties in harmony with the intent of the stipulation. We see no cause for assuming that the two appraisers chosen by the defendant were dishonest or unfair because they agreed upon figures which were finally agreed upon by the umpire jointly selected by the parties; that was clearly contemplated by the terms of the agreement. The parties joined in the selection of one man and then agreed that each party should select two others, and that an agreement by a majority should constitute the report of the board of appraisers, to become binding upon both. There were no limitations imposed upon this absolute right of selection; it was understood that each party was to be represented by its partisans, while the person jointly selected was to have the power of deciding between them, in the event that they diverged in their judgments. The defendant selected two men, who, with three others, had previously examined these same premises and reported to the defendant's counsel their estimate of the damages, and the plaintiff selected Mr. Whitney, who had been employed by him in surveying these same premises, and whose maps were used in the appraisal, while Mr. Barnett seems not to have had any relation with the parties. Neither party held out any pretense that he was selecting an unprejudiced member; the unprejudiced member of the board was jointly selected, while the others were selected because they were supposed to be able to present the best aspects of his employer to the board as a whole, and the fair import of the agreement was that the umpire jointly selected should decide between these contending forces.

Nor is there anything in the suggestion that because the majority of the board remained over Sunday at Tupper Lake, and that the two members selected by the defendant engaged in figuring over the problems in the office of one of them, and that Wheeler was present in the office some part of the time, tend to establish fraud, in the absence of some direct evidence tending to show a dishonest motive. Whatever they did appears to have been done openly, and the mere fact of friendly associations between men engaged in a joint work is not a sufficient ground for predicating fraud. The presumption of honesty and good purpose is essential to the administration of the law, and the petty suspicions of parties to a litigation, or of their zealous counsel, ought not to take the place of proof. It is evident from a reading of the record that Mr. Barnett is an opinionated person, fond of having his own way, and it is highly probable that there may have been some friction; but there is nothing to fairly indicate that he did not have as much voice in the proceeding as he was entitled to, and the mere fact that he and Mr. Whitney refused to complete their labors is not at all conclusive that the members that did discharge that duty were wrong in their purpose, though it seems to us clear that they misapprehended the scope of their duties.

From a reading of the complaint and the stipulation, it seems clear to us that the purpose sought was the fixing of the damages to each separate lot in a large tract of land, without any regard to the question of liability. There was a plot of land of 26,000 acres traversed by railroads operated by the defendant. This was known as township No. 19, and was subdivided into 48 lots, varying in size from 524 to 560 acres each. The fire which caused the damage occurred in the fall of 1908. There appear, in fact, to have been three separate fires, and the damages resulted to different parts of this large tract, the aggregate of the burned area being something like 8,000 acres, and what was intended by the stipulation was that these appraisers should go over this tract, locate the fire area in each instance, and determine what damage had been done to each particular lot, without any reference to the legal questions which might come up in the course of the trial as to the primary liability, or the duty which the defendant might owe to reduce the damages by salvage and otherwise. This being the purpose of the appraisal, it seems to us that the board of appraisal had nothing to do with the so-called Kellogg contract; whether the plaintiff had made a good or bad bargain in the sale of the timber after the fire had nothing to do with their duties. What they were there to do was to determine the damages to each lot; the language of the stipulation is that:

"Such appraisers shall fix the amount of damages upon said township 19 by fires during said months of September, October and November, 1908, by lots, giving the number of the lot and the amount of damage which the board, or a majority of them, shall find was done upon such lot by the fires during such period."

They were not called upon to determine whether the plaintiff had leased the land, or sold the timber, or what he had done; their duty was simply to determine what damage had been done to the several lots in township 19, and when this was done their duties were at an end. Instead of confining themselves to the provisions of the stipulation, the members selected by the defendant, apparently with the acquiescence of Mr. Wheeler, appear to have got hold of a contract between the plaintiff and C. C. Kellogg & Sons Company, by the terms of which the plaintiff had disposed of the soft wood timber upon a considerable portion of the tract subsequent to the fire, and the majority held that, this being the case, the plaintiff suffered no damage, and that it was not necessary to give anything on account of the damage to such timber. This seems to us such a palpable mistake in the purpose of the appraisal as to warrant setting the same aside, without any suggestion of dishonesty on the part of any one. Whether the plaintiff had suffered loss was not the question submitted to the judgment of this board; it was given to them to determine the amount of damage which the several lots had sustained by reason of the fire, leaving the question of the defendant's liability, as well as all other questions of law, to be determined upon the trial of the action. It may be true that the plaintiff received as much for the timber as it was worth; he may even have received a price in excess of the value of the timber, and equal to his entire damage by fire, but that was not left to the board of ap-

praisers. They were to determine the entire damage resulting from the fire, apportioned to the several lots in the tract in proportion to their damage, and, when this fact was established, the court was to be called upon to adjust the law to the facts as they appeared. The majority of the appraisers, acting no doubt in good faith, assumed to determine questions not submitted to them, and this is such a palpable mistake as to justify the court in setting aside the appraisal. This should be done, however, upon this proposition, and not upon the theory that acts in and of themselves, capable of an innocent construction, amount to fraud. We think the case does not disclose evidence sufficient to justify a conclusion of fraud; no motive, beyond that which would be expected to exist where parties have agreed to select their own champions and submit the result to a majority, one of whom had been selected by joint action, and the relief is granted upon the broad equitable basis that both of the parties have been deprived of the benefits which the appraisal was intended to afford.

"All stipulations and agreements made between parties in the progress of an action in the Supreme Court, and affecting proceedings in it, and all orders entered thereon, are within the control of the court, and may be set aside in the discretion of the court whenever the parties can be restored to the same condition in which they would have been if no agreement had been made." Barry v. Mutual Life Ins. Co. of New York, 53 N. Y. 536.

And while it is contended by the defendant that it cannot be restored to its original position, by reason of the fact that the order appealed from discredits its witnesses, we think the record does not justify any assumption that the defendant's appraisers, who will become, no doubt, its witnesses on the trial, were dishonest. They simply assumed to determine a question of law not within their jurisdiction, and, for this failure to appraise all of the lots as contemplated by the stipulation, it has failed of its true purpose, and the defendant is not fairly entitled to have the appraisement introduced in evidence as provided in the stipulation. The appraisers in behalf of both parties were, no doubt, influenced in a measure by their selection; they were chosen with that purpose in view—each was expected to champion his own side of the question, with the fifth man, jointly selected by the parties, to act as umpire. But, with due allowance for this divergence, there is no reason to believe that honest and intelligent men, considering the same state of facts, in the light of equal experience, could differ so widely as appears from the record. A large part of this divergence is due, no doubt, to the fact that the defendant's appraisers looked upon practically one-half of the burned area as outside of their duties—as having been adjusted under the so-called Kellogg contract. With this they had nothing to do; they were not to determine whether the plaintiff had suffered a loss by reason of the fires, but they were to "fix the amount of damages upon said township 19 by fires * * * by lots, giving the number of the lot and the amount of damage which the board, or a majority of them, shall find was done upon such lot by the fires during such period." There has, it will be seen, been no determination of this question. The report does not pretend to give any damages for the burning of the soft timber on practically one-half of the 8,000 acres, and it would be man-

ifestly improper to permit this report to stand as a performance of the conditions of the stipulation. The authorities cited by Mr. Justice Kellogg, in his opinion on the original motion, fully justify the order, and these are in harmony with Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 444, 22 Sup. Ct. 698, 46 L. Ed. 968.

The orders appealed from should be affirmed, with $10 costs and disbursements. All concur; KELLOGG, J., in result, in opinion in which SMITH, P. J., and LYON, J., concur.

JOHN M. KELLOGG, J. (concurring in result). [1, 2] Evidently neither party contemplated that the four appraisers aside from Mr. Wheeler should be disinterested. The defendant selected two partisans; the plaintiffs selected one. Neither is therefore in a position to claim that the other did not select impartial appraisers. The five appraisers were to act as a board, which implies that the full board was to act, having the benefit of the knowledge, arguments, and suggestions of each member. I think Mr. Whitney and the defendant's appraisers prevented the board, as such, from making the appraisal contemplated by the stipulation. They precluded a consideration and discussion of the matters by the board as such. I concur in the opinion of Mr. Justice Borst that the arbitrators did not act as a board according to the true spirit of the stipulation. The stipulation provides that the appraisers may call upon either party for any data, copies of contracts or documents which they may require in making the appraisal. If the appraisers were simply to determine the amount of physical damage done by the fire upon lot 19, it is difficult to see what contracts they would require from the parties. After the fire the plaintiff had contracted with the Kelloggs by which they were to take, on certain conditions, certain of the damaged timber. It was the right and the duty of the appraisers to take that contract into consideration. If the plaintiff was receiving for the timber, after the fire, all it was worth before the fire, that fact shows that the damages could not be large. I think the stipulation meant that the appraisers were not to determine the question of liability, but were to fix the damages, leaving the question of liability to be determined by the evidence, and if the defendant was found liable the decision of the appraisers as to the amount would furnish the measure of damages. It seems to me, therefore, that the Kellogg contract was a proper matter for consideration by the commission.